IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: Condemnation of Premises | : | |
| Owned by Roy E. Powell, II, in The | : | |
| Township of Logan by Altoona/ | : | No. 688 C.D. 2020 |
| Logan Township Mobile Emergency | : | |
| Medical Department Authority | : | Argued: April 12, 2021 |
| | : | |
| Appeal of: Roy E. Powell, II | : | |

BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge (P.)
HONORABLE ANNE E. COVEY, Judge

OPINION BY
JUDGE McCULLOUGH                                       FILED: July 6, 2021


Roy E. Powell, II (Powell) appeals from the June 17, 2020 order of the
Court of Common Pleas of Blair County (trial court), which denied his motion for
reconsideration of the order overruling his preliminary objections to the Declaration of
Taking[1] (Declaration) filed by the Altoona/Logan Township Mobile Emergency
Medical Department Authority (AMED), that sought to condemn Powell's property
(Property) for the purpose of installing a powerline to provide electric service to its
new ambulance station currently under construction.

The general question before this Court is whether the trial court
erroneously overruled Powell's preliminary objections. Although numerous

---

[1] The taking of property is limited by the United States and Pennsylvania Constitutions. *See*
U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just
compensation."). The Fifth Amendment's Takings Clause applies to the states through the Fourteenth
Amendment, U.S. Const. amend XIV. *See Phillips v. Washington Legal Foundation*, 524 U.S. 156,
163-64 (1998); Pa. Const. art. I, § 10 ("[N]or shall private property be taken or applied to public use,
without authority of law and without just compensation being first made or secured.").

preliminary objections were raised, we focus on whether AMED had the authority to condemn for the purpose of installing electric transmission lines and whether the Declaration adequately described the property sought to be taken.

## I. Factual Background

### A. AMED's Declaration of Taking

On November 19, 2019, AMED filed the Declaration pursuant to the Municipality Authorities Act (MAA) in the trial court alleging the following. (Reproduced Record (R.R.) at 1-6.)[2] AMED, the condemnor, is a municipal authority situated in Blair County. *Id*. at 2. The condemnee is Powell, a resident of Altoona, Pennsylvania, and Logan Township. *Id*. The Property is located at 820 Shand Avenue, Altoona, Pennsylvania. *Id*. The condemnation was authorized by resolution of the Board of Directors of AMED (Resolution). *Id*. The stated purpose of the condemnation is "to acquire possession of a temporary and permanent easement for the installation of an electric power line necessary for the construction of an ambulance facility and business office of [AMED]." *Id*. The description of the portion of the Property to be condemned was identified pursuant to an exhibit attached to the Declaration. *Id*. at 2-3. This exhibit consists of a one-page taxation map, identifying the Property with a faintly bold outline around it, bearing the tax parcel number 14.00-15AR-048.00-000 and instrument number 200916068. *Id*. at 4-5. The Declaration alleged that notice of the condemnation was recorded with the Recorder of Deeds of Blair County and that a plan showing the condemned Property could be inspected at AMED's offices. *Id*. at 3. The Declaration further stated that the title sought to be acquired was fee simple absolute. *Id*. The same day, AMED filed a bond (Bond) pursuant to section 303 of the Eminent Domain Code (Code), 26 Pa.C.S. §303. (R.R.

---

[2] 53 Pa.C.S. §§5601-5623.

at 7.) The Bond identified the same Property, using the same description as the Declaration. *Id.*

### B. Powell's Preliminary Objections to the Declaration of Taking

On December 20, 2019, Powell filed preliminary objections to the Declaration. (R.R. at 10-17.) The first preliminary objection alleged that AMED is not a valid municipal authority under the MAA, and therefore cannot exercise eminent domain power under section 5615(a)(1) of the MAA, 53 Pa.C.S. §5615(a)(1). (R.R. at 11.) The second preliminary objection argued that even if AMED was a valid municipal authority, the acquisition of acquiring an easement for the installation of an electric powerline is not a valid exercise of eminent domain power for a municipal authority under section 5607(a) of the MAA, 53 Pa.C.S. §5607(a). *Id.* Preliminary objection three averred that only a public utility governed by the Pennsylvania Public Utility Code[3] has the power to condemn property for erection of electrical power lines under section 1511(a)(2) of the Associations Code,[4] 15 Pa.C.S. §1511(a)(2), not a municipal authority such as AMED. *Id.* at 12. The fourth preliminary objection argued that the Resolution authorizing the Declaration is inadequate under 26 Pa.C.S. §302(b)(3) because it is ambiguous and overly broad as to what property rights are to be acquired and what portion of the Property is to be condemned. *Id.*

Preliminary objection number five alleged that the description of the property to be condemned in the Declaration is insufficient under 26 Pa.C.S. §302(b)(5). *Id.* at 12-13. The sixth preliminary objection averred that the Declaration inadequately stated the nature of the title sought to be acquired because it alleged that the title was to be a temporary and permanent easement, but also in fee simple absolute.

---

[3] 66 Pa.C.S. §§101-3316.

[4] 15 Pa.C.S. §§101-9507

*Id*. at 13.  Preliminary objection seven argued that the Declaration failed to satisfy the requirement that just compensation be secured under the Code, 26 Pa.C.S. §302(b)(8), because just compensation had not been secured.  *Id*.  The final preliminary objection alleged that the proposed electrical transmission line is prohibited under section 1511(b)(1)(i) of the Associations Code, 15 Pa.C.S. §1511(b)(1)(i), because it is within 100 meters of a dwelling home.  *Id*. at 14.  Based on the foregoing, Powell requested that the Declaration be dismissed, and that reasonable fees and costs be awarded.  *Id*.

## C.    The Trial Court's Dismissal of the Preliminary Objections

On March 17, 2020, the trial court overruled Powell's preliminary objections.  (R.R. at 68.)  The trial court explained that the preliminary objections only raised legal issues, and therefore an evidentiary hearing was not necessary.  (R.R. at 57.)  With respect to the first preliminary objection, the trial court held that AMED was a valid joint authority under the MAA, organized for the purpose of providing medical emergency services, and that it is entitled to exercise the power of eminent domain as a municipal authority.  *Id*. at 60.  The trial court held that AMED's eminent domain authority was the same as the class of the municipality that organized it, and that because Altoona is a third class city,[5] AMED is entitled to exercise the power of eminent domain consistent with a third class city.  *Id*.  *See* 53 Pa.C.S. §5616(b); 11 Pa.C.S. §§10101-14207.  The trial court reasoned that under section 12801 of the Third Class City Code, 11 Pa.C.S. §12801, AMED is permitted to condemn property "for the erection of electric power and light plants, as well as public buildings," and therefore, its condemnation for an easement on the Property for the installation of electrical power lines was valid.  (R.R. at 60-61.)  The trial court dismissed the second preliminary objection on the same grounds, *i.e.*, that AMED is a municipal authority, has the power

---

[5] Statutory authority on the particulars of a third class city exists in the Third Class City Code, 11 Pa.C.S. §§10101-14207. *See also* 53 Pa.C.S. §§41101-45000.

4

to condemn as a third class city, and therefore, can condemn property for the erection of electric power and light plants, and by extension, electric power transmission. *Id.* at 61-62.

The trial court dismissed the third preliminary objection on the grounds that AMED is not a privately owned utility corporation and is therefore not bound by the limitations that would apply to such an entity. *Id.* at 62. The fourth preliminary objection was dismissed on the grounds that the Resolution adequately described the property rights being acquired, the nature of the easement being acquired, and the location of the easement being acquired, and that this preliminary objection was not permitted under section 306(a) of the Code, 26 Pa.C.S. §306(a). *Id.* at 63-64. The trial court dismissed the fifth objection, holding that Powell was well aware of the nature and extent of the easement sought in the condemnation, and that the language in the Declaration was clear as to the state of title being taken and where the easement was to be located on the Property. *Id.* at 64-65. Moreover, the trial court explained that AMED has statutory authority under section 12803 of the Third Class City Code, 11 Pa.C.S. §12803, to take the easement "as a fee simple interest as a matter of law." *Id.* at 65.

The sixth preliminary objection was overruled on the grounds that the nature of the title to be acquired was adequately described. *Id.* at 65. The trial court dismissed the seventh preliminary objection, holding that AMED filed a bond with the Prothonotary of Blair County pursuant to section 303(a) of the Code, 26 Pa.C.S. §303(a). *Id.* at 66. Finally, the trial court overruled the last preliminary objection, number eight, on the grounds that this objection was not permissible under section 306(a)(3) of the Code, 26 Pa.C.S. §306(a)(3), and that there is currently a powerline installed at the existing location, which is already within 100 meters of the Property

5

even though it may be prohibited under section 1511(b)(1)(i) of the Associations Code,15 Pa.C.S. §1511(b)(1)(i). *Id*. at 66-67.

### D. Powell's Motion for Reconsideration

On March 26, 2020, Powell filed a motion for reconsideration. Generally, Powell reiterated the arguments he made in his preliminary objections. Notably, Powell argued that the trial court erred in failing to hold an evidentiary hearing as required under section 306(f)(2) of the Code, 26 Pa.C.S. §306(f)(2), because facts are in dispute. *Id*. at 71. Next, Powell argued that the trial court erred in concluding that the nature of the easements being acquired are both easements and fee simple absolute. *Id*. He argued that this conclusion by the trial court was problematic because it would inhibit an assessor from making an accurate assessment, and that taking a fee simple interest was excessive, where an easement would suffice. *Id*.

On March 27, 2020 the trial court granted the motion and scheduled a hearing to consider the motion for reconsideration on the merits.[6] (R.R. at 98.) On April 1, 2020, the trial court supplemented its March 27, 2020 order, explaining that instead of a hearing on the merits, it would hear "oral argument as to whether [Powell] is entitled to an evidentiary hearing." (R.R. at 99.) Oral argument was held on the motion for reconsideration on June 10, 2020. (R.R. at 102.) On June 17, 2020, the trial court "denied and dismissed" the motion for reconsideration, consistent with its March 17, 2020 opinion. (R.R. at 131.)

In its corresponding opinion, the trial court explained that it conducted a status conference with counsel on February 25, 2020, "at which time counsel agreed that [it] could determine the preliminary objections based upon submissions by the

---

[6] Powell also filed a notice of appeal on March 27, 2020. (R.R. at 77.) However, because the trial court granted reconsideration, Powell filed a praecipe to strike the notice of appeal pursuant to Pennsylvania Rule of Appellate Procedure 1701(b)(3), Pa.R.A.P. 1701(b)(3).

6

parties." (Powell's Br. App. at 4.) In the trial court's view, Powell's motion for reconsideration was a restatement of the arguments raised in his original preliminary objections. *Id*. at 5. The trial court noted that during oral argument on June 10, 2020, Powell acknowledged that documentation had been provided proving that AMED is a municipal authority, rendering the first preliminary objection moot. *Id*. at 5.

As to the evidentiary hearing issue, the trial court explained that in the motion for reconsideration, Powell argued, in part, that the court erred by failing to hold an evidentiary hearing. (Powell's Br. App. at 4.) The court explained that under section 306(f)(2) of the Code, a court shall take evidence if an issue of fact is raised; however, there was no factual issue for it to consider. *Id*. at 4. The trial court explained that Powell stated that preliminary objections three through seven raised legal arguments, and therefore a hearing was no longer necessary for those preliminary objections. *Id*. In sum, the trial court concluded that the motion for reconsideration "was merely a rehashing of the [p]reliminary [o]bjections originally filed on behalf of [Powell]." *Id*. at 7. Thus, in denying the motion for reconsideration, the court incorporated its opinion and order which overruled the preliminary objections. *Id*. Powell appealed to this Court.

## II. Analysis

On appeal,[7] Powell raises two issues: First, whether the trial court erred as a matter of law and abused its discretion in overruling preliminary objections

---

[7] "Our review of a trial court's decision to sustain or overrule preliminary objections to a declaration of taking in an eminent domain case is limited to determining whether the trial court abused its discretion or committed an error of law." *Beaver Falls Municipal Authority ex rel. Penndale Water Line Extension v. Beaver Falls Municipal Authority*, 960 A.2d 933, 936 (Pa. Cmwlth. 2008).

two through eight; and second, whether the trial court abused its discretion when it held that no issues of fact were raised.

As to the first issue, Powell concedes that he withdrew his first preliminary objection arguing that AMED was not a valid municipal authority. As to his second preliminary objection, Powell argues that eminent domain powers must be strictly construed, and that AMED's power to condemn goes no further than what is legislatively granted to it. Powell argues that AMED's claim that it can use eminent domain for the "erection of electric power and light plants" under 11 Pa.C.S. §12801(a)(4), is incorrect because the plain language of this section does not permit AMED to erect electric power lines.[8] Relatedly, Powell argues that AMED's argument that it can exercise eminent domain powers to the same extent as a Third Class City is erroneous because 11 Pa.C.S. §12801(a)(4) actually prescribes the "manner" in which AMED is to exercise its eminent domain authority, not its scope.

With respect to the third preliminary objection, Powell argues that even if AMED was a public utility and was able to use eminent domain to install electrical power lines, it would need to obtain a certificate of public convenience under 66 Pa.C.S. §1104. This is related to the eighth preliminary objection, in which Powell argues as a matter of law that the trial court erred in concluding that the electrical transmission lines could be within 100 meters of Powell's dwelling because it is prohibited under 15 Pa.C.S. §1511(b)(1)(i).

As to the fourth preliminary objection, Powell argues that AMED's Resolution authorizing the Declaration is insufficient. Powell argues that under 26 Pa.C.S. §302(b)(2), the Declaration must contain a specific reference to the Resolution that authorized the declaration of taking, including the date when the Resolution was

---

[8] Powell recognizes that AMED's Declaration is authorized by section 5615 of the MAA, 53 Pa.C.S. §5615, which provides that a municipal authority shall have the power of eminent domain.

8

adopted and the place where such record may be examined. He argues that AMED had no legal power to condemn for the installation of electric power lines, and the Resolution's assertion of authority under the Code for the power to do so is erroneous. Further, Powell argues that the Resolution is ambiguous and overly broad as to what property rights would be acquired (*i.e.*, an easement, or title in fee simple absolute). In the same vein, he argues that the Resolution is ambiguous and overly broad with respect to which property rights will be affected and what portion of the Property will be taken. As to the fifth and sixth preliminary objections, Powell argues that the description of the Property in the Declaration is insufficient because "it lacks a metes and bounds description or other adequate description, does not include a detailed plot plan, and alleges the taking of contradictory property rights." (Powell's Br. at 30.) Powell argues that *Szabo v. Department of Transportation*, 159 A.3d 604, 607 (Pa. Cmwlth. 2017), *aff'd sub nom.* 202 A.3d 52 (Pa. 2019), is controlling. He argues that in *Szabo*, the condemnor failed to provide adequate notice of the extent of the taking because the description in the declaration failed to accurately identify which *part* of the property was subject to the taking, and therefore, there was a risk that the taking was greater than necessary.

Here, Powell argues that the Declaration ambiguously states in part that the title to be acquired is a temporary and permanent easement, but later the Declaration states that the title to be acquired is in fee simple absolute. Moreover, Powell argues that the description of the Property is wholly inadequate because the exact area of the Property being taken is totally unclear. Relatedly, Powell argues that the trial court erroneously concluded that AMED could condemn the entire fee under 11 Pa.C.S. §12803 because it does not have the same condemnation rights as a Third Class City.

9

He maintains that section 5615 of the MAA, 53 Pa.C.S. §5615, does not authorize a taking in fee simple absolute.

In support of his argument that the trial court erroneously dismissed preliminary objection number seven, Powell argues that the Declaration fails to state how just compensation has been made or secured. Powell argues that even though AMED filed a bond, it failed to state *how*, under section 302(b)(8) of the Code, "just compensation has been made or secured." 26 Pa.C.S. §302(b)(8).

With respect to the second issue raised on appeal, Powell maintains that the trial court was required to hold an evidentiary hearing under the Code. Powell avers that under section 306(f)(2) of the Code, 26 Pa.C.S. §306(f)(2), if an issue of fact is raised, the trial court must take evidence. Powell asserts that he argued before the trial court that preliminary objections three through seven presented legal issues, and that as to preliminary objection eight, a hearing was necessary. Powell maintains that counsel suggested that if the trial court ruled on any of the legal preliminary objections in his favor, a hearing would be unnecessary as to the factual questions.

Moreover, Powell argues that the trial court erroneously relied on facts that were not of record. Specifically, he argues that the portion of the trial court's opinion appearing at pages 56 through 57 of the Reproduced Record, where the trial court discusses AMED and Penelec's attempts to procure an easement prior to filing the Declaration, have no evidentiary support in the record that was developed before the trial court. Along these same lines, he argues that the trial court's conclusion that the proposed powerline would be in the same place as the existing one is erroneous because there was no evidence presented before the trial court indicating where the existing power is located.

AMED responds that as a municipal authority, it has the power to condemn Powell's property for the purpose of installing an electric power line. AMED

maintains that it has the same *power* of condemnation as the municipality that incorporated it. Thus, because the City of Altoona, which incorporated AMED, is a Third Class City, under 53 Pa.C.S. §5615, AMED maintains that it has the same power of eminent domain that is granted to Altoona.[9] With respect to the powers of a Third Class City, AMED argues that under 11 Pa.C.S. §12801, it is permitted to condemn property for the erection of electric power and light plants, and public buildings, and therefore, it "necessarily follows that this power would [allow it] to condemn for the purpose of erecting transmission lines to provide electric service to a public building such as AMED's new ambulance station, currently under construction." (AMED's Br. at 11.) Countering Powell's arguments, AMED maintains that because it is not a public utility corporation, it is not bound by the limitations that apply to public utility corporations. *See Sewickley Water Works v. Pennsylvania Public Utility Commission*, 405 A.2d 1384, 1387 (Pa. Cmwlth. 1979). AMED avers that under section 5607(a)(2) of the MAA, 53 Pa.C.S. §5607(a)(2), it may construct buildings to be used for public purposes, and the construction of an ambulance station is clearly a public purpose for which it can exercise the power to condemn.

Next, AMED maintains that a certificate of public convenience is not needed because it is not a public utility corporation. Specifically, it argues that it is not a "public utility" as defined by the Public Utility Code, 66 Pa.C.S. §102. AMED argues that under 1511(b) of the Associations Code, 15 Pa.C.S. §1511(b), it can place an electrical transmission line within 100 meters of a dwelling place because it is not a public utility corporation.

With respect to Powell's objections to the Resolution authorizing the Declaration, AMED argues that no provision in the Code provides any guidance on the

---

[9] AMED argues that the same applies to Logan Township, a township of the second class, which co-incorporated AMED with Altoona.

11

form or substance of a resolution authorizing a declaration of taking. Specifically, AMED argues that challenging the Resolution is not a permitted basis for a preliminary objection to a declaration of taking under 26 Pa.C.S. §306(a). Aside from the alleged defects in the Resolution, AMED argues that the Declaration is legally sufficient. With respect to the nature of the property rights being taken, AMED contends that the Declaration clearly states that it is taking a temporary and permanent easement for the installation of an electric power line, necessary for its new facility. Moreover, AMED states that both it and Penelec communicated the nature of the easement to Powell on numerous occasions before filing the Declaration.

As to Powell's objection that the description of the Property is inadequate under section 302(b)(5) of the Code, AMED argues that the description of the Property in the Declaration is adequate because it identifies the owner (Powell), lists his address, and includes an attachment that contains a brief legal description of the Property, identifying it by its tax parcel number and instrument number. AMED asserts that "it is just not necessary to detail every aspect of the project involved to sufficiently identify the property at issue." (AMED's Br. at 28). It argues that the potential ambiguity in the Declaration, which states that the purpose is to acquire possession of a "temporary and permanent easement" and that "the title to be acquired shall be in fee simple absolute," is irrelevant to the identification of the property being taken. Moreover, AMED argues that as a matter of law, under 11 Pa.C.S. §12803, it must take the property in fee simple.

Next, AMED argues that under section 302(b)(8) of the Code, 26 Pa.C.S. §308(b)(8), the Declaration only needed to contain a statement that just compensation has been made or secured. It argues that as a condemnor, it was only required to *state* that a bond was secured, not *how* it was secured. To this extent, AMED argues that it complied with section 302(b)(8) of the Code, when it filed the Bond pursuant to section 303 of the Code, 26 Pa.C.S. §303, which does not require a surety with a fixed amount.

12

It maintains that section 303(a) of the Code specifies that its Bond is acceptable so long as it specifies that the condemnor shall pay damages as determined by the law.

As to the evidentiary issues, AMED argues that the trial court is not required to hold a hearing when the condemnee does not request one, or when the court is advised that one is not necessary. Specifically, AMED argues that Powell's counsel specifically instructed the trial court that he did not believe there were any issues of fact necessary to be determined to rule in Powell's favor. Thus, AMED maintains that Powell waived his argument as to whether a hearing was necessary. As to the issue of the power lines being located within 100 meters of a dwelling, AMED argues that even if an evidentiary hearing was requested, it would be futile to hear facts on this issue because AMED is not a public utility, and therefore, that statute is inapplicable.

### A. Preliminary Objections to AMED's Declaration

"[T]he power of eminent domain is an inherent one possessed by the Commonwealth, as sovereign, which permits it to take private property for a public use if the landowner receives just compensation for the taking." *Robinson Township v. Commonwealth*, 147 A.3d 536, 586 (Pa. 2016). The Code "provides a complete and exclusive procedure and law to govern all condemnations of property for public purposes and the assessment of damages." 26 Pa.C.S. §102. We have explained that

> [p]reliminary objections in the context of eminent domain actions serve a different purpose than preliminary objections filed in other civil actions. *In re Condemnation of .036 Acres, More or Less, of Land Owned by Wexford Plaza Associates*, 674 A.2d 1204 (Pa. Cmwlth. 1996). Not only are the Rules of Civil Procedure not applicable to eminent domain proceedings, *Gilyard v. Redevelopment Authority of Philadelphia*, 780 A.2d 793 (Pa. Cmwlth. 2001), but preliminary objections filed pursuant to [s]ection [3]06 of the [Code] serve a very different purpose than those filed under the Rules of Civil Procedure. In eminent domain cases, preliminary objections are intended as a procedure to resolve expeditiously the factual and legal challenges to a declaration

of taking before the parties proceed to determine damages. *North Penn Water Authority v. A Certain Parcel of Land*, 650 A.2d 1197 (Pa. Cmwlth. 1994).

*In re Condemnation by City of Coatesville*, 898 A.2d 1186, 1189 n.7 (Pa. Cmwlth. 2006). Under the Code

> [p]reliminary objections shall be limited to and shall be the exclusive method of challenging
> (i)    The power or right of the condemnor to appropriate the condemned property unless it has been previously adjudicated.
> (ii)   The sufficiency of the security.
> (iii)  The declaration of taking,
> (iv)   Any other procedures followed by the condemnor.

26 Pa.C.S. §306(a)(3)(i)-(iv). We review the preliminary objections under the foregoing principles.

1. <u>Preliminary Objection No. 2: AMED Does Not Have the Statutory Power to Condemn for the Erection of an Electric Powerline.</u>

The first question we must answer is whether AMED has the statutory power to condemn property for the purpose of erecting electric powerlines. Our Supreme Court has described the power of eminent domain as follows:

> Although the power is an inherent attribute of sovereignty, it is regulated by constitutional and statutory law, and thus, **it can only be exercised within the limitations established by law**. The Commonwealth may exercise the power of eminent domain directly or indirectly by delegating it. Because eminent domain is in derogation of private rights, any legislative authority for its use must be strictly construed in favor of the landowner.

*Reading Area Water Authority v. Schuylkill River Greenway Association*, 100 A.3d 572, 579 (Pa. 2014) (citations omitted) (emphasis added). "When the legislature confers the right to exercise eminent domain power, that power is limited to that which

14

has been expressly stated." *Township of Millcreek v. Angela Cres Trust of June 25, 1998*, 25 A.3d 1288, 1292 (Pa. Cmwlth. 2011).

AMED is a municipal authority organized under the MAA.[10] Section 5615 of the MAA provides in relevant part as follows:

> (a)(1) Except as provided in paragraph (2), the authority shall have the power to acquire by purchase or eminent domain proceedings *either the fee or the rights, title, interest or easement in such lands*, water and water rights as the authority *deems necessary for any of the purposes of this chapter. . . .*
>
> * * *
>
> (b) *The right of eminent domain shall be exercised by the authority in the **manner** provided by law for the exercise of such right by municipalities of the same class as the municipality which organized the authority.* Eminent domain shall be exercised by a joint authority *in the same **manner*** as is provided by law for the exercise of such right by municipalities of the same class as the municipality in which the right of eminent domain is to be exercised. The right of eminent domain herein conferred by this section may be exercised either within or without the municipality.

53 Pa.C.S. §5615(a)(1), (b) (emphasis added). The "purposes of this chapter" refer to the purposes identified in section 5607 of the MAA, 53 Pa.C.S. §5607(a)(1)-(18). The only reference to electricity in section 5607(a) relates to facilities for generating electric power that are related to incinerator plants, dams, water supply works, water distribution systems or sewage treatment plants. 53 Pa.C.S. §5607(a)(12). Electricity generated from any of these facilities may be sold or distributed only on a sale-for-resale basis to one or more entities authorized to sell electric power to the public. 53 Pa.C.S. §5607(a)(12)(i).

---

[10] As explained above, Powell withdrew preliminary objection one, which alleged that AMED was not a valid municipal authority.

The language of the statute which enables AMED to condemn must be strictly construed. A strict construction of this statute clearly indicates that AMED does not have the power to condemn for the erection of an electric power line. AMED's statutory power under sections 5607 and 5615 relate to the generation of electric power related to incinerator plants, dams, water supply works, water distribution systems, and sewage treatment plants. The same applies to section 5607(a)(2) of the MAA, which states that a municipal authority can construct buildings devoted to public uses. Nothing in this section would indicate that this purpose also would include the condemnation of nearby properties to install power transmission lines related to a building project. Constructing a building is wholly different from condemning property for the installation of power transmission lines. Such a reading of this section would run contrary to our duty to strictly construe eminent domain powers.

Nevertheless, AMED argues that under section 5615(b) of the MAA, it may exercise the power of eminent domain only to the *same extent* as Altoona, the municipality which incorporated it. AMED contends that the language "[t]he right of eminent domain shall be exercised by the authority in the manner provided by law for the exercise of such right by municipalities of the same class as the municipality which organized the authority," in section 5615(b) of the MAA gives it the power to do so. Powell retorts that section 5615(b) provides that AMED can condemn in the same *manner* as Altoona, but *not* to the same *extent*. Our Supreme Court has agreed with this interpretation. The Supreme Court recognized that former section 314 of the MMA provided that

> [t]he right of eminent domain shall be exercised by the [a]uthority *in the manner* provided by law for the exercise of such right by municipalities of the same class, as the municipality by which such [a]uthority was organized.
>
> In the case of a joint [a]uthority eminent domain shall be exercised by the [a]uthority *in the same manner* as is

16

> provided by law for the exercise of such right by municipalities of the same class as the municipality in which the right of eminent domain is to be exercised.

*Application of Municipal Authority of Upper St. Clair Township, Allegheny County*, 184 A.2d 695, 699 (Pa. 1962) (emphasis in original) (quoting *former* 53 P.S. §314[11]). This language is nearly identical to the language in section 5615(b) of the MAA, 53 Pa.C.S. §5615(b). The Court held that the phrase "in the manner . . . merely indicates that procedural rules set forth in the code of the local municipality are to be followed but does not dictate that the substantive law governing the local municipality must be controlling." *Id*. The phrase "in the manner" refers to the procedure that AMED is to follow, not its substantive condemnation rights. *See Whitemarsh Township Authority v. Elwert*, 196 A.2d 843, 848 (Pa. 1964) ("[T]he authority for an extra-territorial eminent domain case was section 11 of the [former MMA], although the actual procedure of the litigation was conducted *in the manner* provided by the applicable provisions of the Third Class City [Code]."). Thus, it is clear that the phrase "in the manner" does not mean that AMED may condemn property to the same extent as Altoona, the third class city which incorporated it.

Due to this conclusion, we need not examine whether the Third Class City Code confers upon AMED the right to condemn for the purpose of installing electric transmission lines.[12]

---

[11] Act of May 2, 1945, P.L. 382, *as amended*, repealed by the Act of July 3, 1980, P.L. 360.

[12] AMED makes much of the fact that section 12801(a)(4) of the Third Class City Code provides that cities of the third class may condemn for "[t]he erection and extension of . . . electric power and light plants . . . ." 11 Pa.C.S. §12801(a)(4). However, this section *clearly* speaks to electric power and light plants. A strict construction of this eminent domain power would not support the conclusion that this language also supports the construction that a municipal authority created by a third class city can condemn for the installation of electric power lines. AMED was also incorporated by Logan Township, which AMED asserts is a township of the second class. AMED maintains that **(Footnote continued on next page…)**

2. <u>Preliminary Objection 5: The Description of the Property in the Declaration is Insufficient for Identification.</u>

Powell maintains that the description of the Property is insufficient for identification because the Declaration states that it is taking a "portion" of Powell's Property, but Exhibit A to the Declaration clearly identifies the entire Property as being taken. Moreover, Powell asserts that the plot plan does not show the exact area of the Property that AMED seeks to take, which makes it impossible for Powell to appraise what is being taken from him.

Powell also argues that the trial court relied on numerous facts that are outside of the record. These facts include statements indicating that the condemnation proceeded after Powell did not grant an easement to Penelec for installing additional wires on an existing utility pole, that Penelec asked AMED to obtain the easement over

---

under section 1701 of The Second Class Township Code (Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§ 65101-68701), it may exercise eminent domain on "a lot or lots of ground located within the township and erect or use buildings thereon for township purposes." 53 P.S. §66701(a). Again, this provision only speaks to the erection of buildings, not supplying them with power. Strictly construing this eminent domain authority, we cannot conclude that 53 P.S. §66701(a) would allow for the installation of electric transmission lines.

Although not cited by the parties, the Court notes Section 13501.1(a) of the Third Class City Code, which provides:

> A city may supply water, lighting, electric, gas or other similar utility service for public and private uses within the city. For these purposes, a city may install, maintain and operate the necessary facilities and acquire property and make improvements as needed. In carrying out the authority granted by this section, a city may exercise the powers granted to it under this chapter or another law deemed necessary to carry out the purposes of this section, including the power to acquire, by eminent domain or otherwise, and the power to temporarily use or lease property.

11 Pa.C.S. §13501.1(a). Counsel does not argue that this provision applies. Even if it did, we have already ruled that AMED cannot condemn to the extent that a third class city can. Thus, this provision, as it relates to AMED, would not confer a finding in favor of AMED in this case.

18

Powell's Property, and that no easement was obtained when the original owners of the Property had a utility pole installed. Significantly, the trial court relied on the fact that Powell was aware of the nature and extent of the easement sought by the instant condemnation because he was provided a copy of the easement which was sought by Penelec. AMED points to these same facts, in support of its position as well. *See* (AMED's Br. at 22-23). AMED does not refute this contention but argues that "[w]hether the [t]rial [c]ourt made reference to any facts in its opinion is really of no moment in this case." (AMED's Br. at 40.) The references to these facts are not found in the Declaration but are described in the filings following Powell's preliminary objections, *i.e.*, responses to motions and briefs. This Court agrees with Powell that none of these facts appear anywhere in the record, and thus, they will not be considered on appeal. It is well established that facts outside of the record may not be considered. *HYK Construction Company, Inc. v. Smithfield Township*, 8 A.3d 1009, 1016 (Pa. Cmwlth. 2010).

Section 302(b)(5) of the Code states that the declaration of taking shall contain "a description of the property condemned, sufficient for identification . . . ." 26 Pa.C.S. §302(b)(5). The "description may be a word description or in plan form." *Milford Traumbauersville Area Sewer Authority v. Approximately 0.753 Acres of Land*, 358 A.2d 450, 454 (Pa. Cmwlth. 1976). Our Supreme Court's decision in *Szabo* is instructive.

Here, the description of the Property in the Declaration states in full that "[t]he description of the premises to be condemned and taken under this [e]minent [d]omain proceeding and a copy of the portion of the Tax Map identifying the property is attached as Exhibit 'A'." (R.R. at 2-3.) We find this description is inadequate.

In *Szabo*, the condemnees owned property at which they operated a hair salon. 202 A.3d at 54. The Pennsylvania Department of Transportation (PennDOT) developed a road expansion plan that would run across a section of the condemnee's

19

property, identified in the declaration of taking as Parcel 5. *Id*. The plot plan served with the declaration also identified two adjacent parcels of land, Parcels 1 and 9. *Id*. However, the plot plan attached to the declaration of taking did not indicate that any portions of Parcels 1 or 9 were condemned or were previously condemned. *Id*. Thus, the condemnees were provided with notice solely with respect to the portion of Parcel 5. *Id*. The condemnees did not file preliminary objections. *Id*. at 55.

Subsequently, the condemnees filed a petition for a hearing, and asserted that the ownership interests described in the declaration of taking were incorrect. *Id*. The petition alleged that the condemnees hired a surveyor to prepare a plan depicting their property (Parcel 5), and that the surveyor's plan demonstrated that the plan attached to the declaration was inaccurate and that it failed to show the *entire* property owned by the condemnees. *Id*. The trial court ruled against the condemnees, and subsequently, they appealed to this Court. *Id*. at 56-57. On appeal to this Court, the condemnees argued that the declaration of taking deprived them of adequate notice of the extent or effect of the taking. *Id*. at 57. We concluded that because PennDOT failed to properly identify the property in the taking, the condemnees had more taken from them than was indicated in the plans. *Id*. The Supreme Court granted PennDOT's petition for allowance of appeal. *Id*. at 58.

The Supreme Court explained that "'[t]he plot plans and property plat filed with the declaration of taking and served upon a condemnee are part of and indeed, the heart of a declaration of taking. It is only by reference to such plans that one can determine what property is the subject of condemnation and, in the case of a partial taking, what part of the property has been taken.'" *Id*. at 59 (quoting *West Whiteland Associates v. Department of Transportation*, 690 A.2d 1266 (Pa. Cmwlth. 1997)).

The Supreme Court concluded that under section 305 of the Code, "written notice shall be given to the condemnee" and "in the case of a partial taking, a plot plan showing the condemnee's entire property and **the area taken**." *Id*. at 63

20

(quoting 26 Pa.C.S. §305(9)) (emphasis added).  The Supreme Court noted that the plan did not show that portions of Parcels 1 and 9 were to be condemned and *did not identify that land as owned by the condemnees*.  *Id*. at 63.  Due to the inaccuracy, more of the condemnee's land than was identified in the plan was subject to the taking.  Our Supreme Court held that "PennDOT bore the burden of accurately notifying the owners of land subject to the taking so that they could protect their interests and secure just compensation."  *Id*. at 64.

Ultimately the Supreme Court held that because PennDOT failed to apprise the condemnees of the extent of the taking, it was appropriate to excuse the condemnee's failure to file preliminary objections and remand for an evidentiary hearing to determine what property interests were affected.  Our Supreme Court's criticism of the faulty plan rings soundly here.  AMED unconvincingly attempts to distinguish *Szabo* on the grounds that only one parcel of land is at issue, whereas in *Szabo*, there were multiple parcels at issue.  This fact does not detract from *Szabo*'s criticism of insufficiently identified plots of land.

Instantly, the Declaration states that the purpose of the taking is "for the installation of an electric power line necessary for the construction of an ambulance facility and business offices for [AMED]."  (R.R. at 2.)  It further states that "[t]he description of the premises to be condemned and taken under this eminent domain proceeding and a copy of the portion of the Tax Map identifying the property is attached as Exhibit 'A'."  *Id*. at 2-3.  The cover page to Exhibit A refers to "[a] portion of Tax Parcel No. 14.00-15AR-048.00-000, Instrument No. 200916068 containing 0.41 acres.  See attached Tax Parcel Map for graphic depiction of the properties involved."  (R.R. at 4.)  The Tax Parcel Map, depicts the Property as follows:



The property outlined in bold is Powell's Property.[13]  The stated purpose of the Declaration is for the installation of an electric powerline.  AMED asserts it is not seeking to condemn the entire Property; however, it appears from Exhibit A to the Declaration that Powell's entire Property is to be condemned.  This is wholly inconsistent with the stated purpose of the Declaration.  From the plan it is impossible

---

[13] This is the image of Exhibit A to the Declaration provided in the Reproduced Record.  (R.R. at 5.)

22

for Powell to identify specifically the portion of his Property that is being taken. For the description to be "sufficient for identification" there must be some basis to determine *where* on the property being taken ***the easement will be located***. The Declaration fails in this respect. Given the description, there is no possible way that a surveyor could identify the location of the easement.

This Court's Decision in *Condemnation by North Strabane Township Municipal Authority, Washington County* (Pa. Cmwlth., No. 1152 C.D. 2016, filed August 18, 2017) (unreported),[14] is instructive. In that case, the landowners appealed the overruling of their preliminary objections to a declaration of taking filed under the Code by the North Strabane Township Municipal Authority. *Id*., slip op. at 1. The municipal authority filed a declaration of taking seeking to take part of the property owned by the landowners for the placement of an underground sewer line. *Id*. at 2. The landowners filed preliminary objections to the declaration of taking arguing, among other things, that the declaration failed to properly notify the landowners of the taking because the description of the property was insufficient. *Id*.

On appeal, the landowners argued that the trial court erred in finding that the notice of the declaration of taking contained all of the elements required by sections 304 and 305(c) of the Code. *Id*. at 4-5. Specifically, the landowners argued that the municipal authority failed to provide a plan sufficient for identification of the condemned property. *Id*. at 5. We noted that section 305(c)(9) of the Code provided that "[i]n the case of a partial taking, a plot plan showing the condemnee's entire property and the area taken" was sufficient for notice. *Id*. (citing 26 Pa.C.S. §305(c)(9)). We noted however, that the plan was a "simple drawing" that failed to state whether it was to scale and that it lacked any measurements of the relative distance

---

[14] *North Strabane Township* is an unreported opinion. Under section 414(a) of this Court's Internal Operating Procedures, an unreported opinion may be cited for its persuasive value. 210 Pa. Code § 69.414(a).

of the taking from structures or property lines. *Id*. at 5. With these omissions, we concluded that the plot plan would not enable a landowner or surveyor to determine the area of the taking with any degree of confidence. *Id*.

Although *North Strabane Township* concerned notice under section 305(c)(9), the concerns expressed by this Court are the same in the instant case. Based on the simple drawing provided in the Declaration, which lacks any specific indication of the portion of the property at issue, it is impossible to determine what part of the Property is being taken, and neither the landowner, nor any surveyor could determine the area of the taking with any degree of reasonable certainty.

AMED suggests that it is only seeking to install an electric transmission line on a pole which already exists on the Property. It is evident from the description in the Declaration and Exhibit A that AMED has failed to even indicate where on the Property such pole is located. An examination of Exhibit A would lead the reasonable mind to think that Powell's entire Property is being condemned for this purpose, which is directly contrary to AMED's arguments. This incongruity highlights the deficient nature of the description.

The seriousness of the failure to identify an easement was made clear in *Dickson v. Pennsylvania Power and Light Company*, 423 A.2d 711 (Pa. Super. 1980), where our sister court addressed whether a property description or plan was sufficient for identification. In that case, a utility company sought to enforce a recorded document granting an easement, which was described in an agreement as being shown on an attached plan; however, no plan was attached. *Id*. at 712. The property was sold, and a house was built where the utility believed it had an easement; thus, the utility sought to remove the house. *Id*. The trial court ordered the residence to be removed, and the Superior Court reversed stating:

> The basic law involved in this matter is not at issue. Notice that land is burdened with an easement is imputed to a

24

purchaser of that land by a properly recorded instrument in which the easement is granted. *Baltimore and Ohio Railroad Company v. Wilson Snyder Manufacturing Company*, . . . 123 A. 858 [(Pa. 1924)]. Specific performance of an agreement of sale will not be granted unless the terms of the agreement are sufficiently set forth and the property to be conveyed is sufficiently identified and described. *Pierro v. Pierro*, . . . 264 A.2d 692 [(Pa. 1970)]. Where a description is sufficient so that one may determine the exact limits of the property included by reference to a plan, deed or other similar records, the law is satisfied. *Cheney v. Carver*, . . . 88 A.2d 746 [(Pa. 1952)]. Ladner on Conveyancing in Pennsylvania states in section 6:09 at page 152[ ]that, "no deed will be operative unless the description is sufficient for . . . identification. **While it need not be technically accurate, the description must be clear and sufficiently precise to enable a surveyor to locate and identify the property**."

*Dickson*, 423 A.2d at 712-13 (emphasis added). Although in the instant matter we are confronted with a context where real property is sought to be taken, the logic remains the same. The requirement that property being taken be described in a manner that is "sufficient for identification" is the same standard required in all instruments conveying real property. *See Pierro*, 264 A.2d at 694 (some citations omitted) ("It is well settled that specific performance will not be granted unless the terms of the agreement are sufficiently set forth and the property to be conveyed is sufficiently identified and described. 'Adequate or ample description is that which would enable a competent surveyor to find the land in question from the agreement or from the references made in it.' *Prager v. McAdam*, [161 A.2d 39 (Pa. 1960)]."). Because AMED failed to identify the specific location of the easement, the description of the Property in the Declaration is not sufficient.

Furthermore, in *Reading Area Water Authority*, our Supreme Court explained:

Eminent domain is a power vested in the Commonwealth to take private property for public use upon payment of just compensation. *See Philadelphia Clay Co[mpany] v. York Clay Co[mpany], . . .* 88 A. 487, 488 [(Pa. 1913)]. *See generally Lance's Appeal*, 55 Pa. (5 Smith) 16, 25, 1867 WL 7489, [at] *7 (1867) ("[A] public interest must lie at the basis of the exercise, or it would be confiscation and usurpation to exercise it."). Land may be taken only to the extent reasonably required by the public purpose for which the power is exercised, else it will be overturned as excessive. *See* [*Middletown Township v. Lands of Stone*, 939 A.2d 331, 338 (Pa. 2007);] *Belovsky v. Redevelopment Authority of City of Philadelphia*, . . . 54 A.2d 277, 283 [(Pa. 1947)]; . . . *Winger v. Aires*, . . . 89 A.2d 521, 523-24 [(Pa. 1952)] (invalidating a taking of land for a public school where the number of acres condemned substantially exceeded what was needed).

100 A.3d at 578-79. Due to the insufficient nature of the description of the Property in the Declaration, it cannot be determined whether the land taken is only for the extent reasonably required for the public purpose. Given our conclusion that the trial court should have granted these two preliminary objections, we need not address any other preliminary objections or issues raised in the instant matter.

### III.    Conclusion

Based on the foregoing we conclude that the trial court erred in overruling these preliminary objections. AMED does not have the statutory power to condemn for the purpose of installing electric transmission lines. Moreover, the description of the Property is inadequate and fails to sufficiently identify what portion of the Property will be condemned.

Accordingly, the trial court's order is reversed.

_____
PATRICIA A. McCULLOUGH, Judge

26

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation of Premises : 
Owned by Roy E. Powell, II, in The : 
Township of Logan by Altoona/ :    No. 688 C.D. 2020
Logan Township Mobile Emergency : 
Medical Department Authority : 
                                       : 
Appeal of: Roy E. Powell, II : 

## ***ORDER***

AND NOW, this 6th day of July, 2021, the June 17, 2020 order of the Court of Common Pleas of Blair County overruling Roy E. Powell, II's preliminary objections is REVERSED.

_____
PATRICIA A. McCULLOUGH, Judge